# CASE MANUFACTURING COMPANY *v.* SOXMAN.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

No. 150. Argued January 16, 19, 1891. — Decided March 2, 1891.

In this case the plaintiff having accepted notes of a limited liability company in settlement, set up that the acceptance was made through a misunderstanding. *Held,* that evidence tending to show knowledge that the plaintiff at the time of the acceptance was a limited liability company was admissible.

When in a case in which the facts are found by the court instead of a jury, there is any evidence tending to support the finding, this court will not review it.

It appearing from the evidence of one of the plaintiff's witnesses that during the dates of these transactions he was acting as its financial manager, his acts in that capacity cannot be repudiated.

The case, as stated by the court, was as follows:

The Case Manufacturing Company, plaintiff in error, is a corporation located at the city of Columbus, State of Ohio, and engaged in the manufacture and sale of flour milling machinery. On the 8th of December, 1883, an order was sent to its home office, received and approved on the 11th of December, which order, omitting immaterial matters, was, with the acceptance, as follows:

" (*Form No. 2.*)

" This form to be used where machines are ordered for changing over a mill, but where the millwright work is not done by the Case Manufacturing Co. Fill up three of these blanks; one for the purchaser, one for the Case Manufacturing Co., and one for the salesman. Fill up blanks carefully. This contract to be binding only when signed by the Case Manufacturing Company, at its home office at Columbus, Ohio.

" LATROBE, *Dec. 8th*, 1883.

" The Case Manufacturing Co., Columbus, O.

" Please ship the undersigned, as near the first day of February, 1883, as possible, the following machinery at and for the price of eight thousand dollars. . . . We agree to receive and pay freight on the same and place them in our mill according to your directions; to supply the necessary power and appliances and other machinery required to obtain the best results, using proper diligence in placing and starting the same. After starting them we are to have thirty days' running time in which to test them, when, if found up to your guarantee, we will settle for the same by paying 2000 dollars cash, 2000 dollars by note due 12 months after accepting of the machinery; and 4000 dollars by note due 18 months, at 6 per cent interest.

" You to guarantee that, with necessary power and proper management, the machines shall have capacity for from 100 to 110 barrels of flour in twenty-four hours; that they shall perform the work they are intended to do as well as any machines now in use for the same purpose, and the results to be equal to those obtained from any of the roller or other modern systems of milling now in use in this country using the same grades of wheat and an equivalent line of machinery. We agree to be responsible for any damage or loss by fire or otherwise to said machines after they reach us, and agree to make no claims for damages on account of delays incident to starting up said mill.

" The title to said machines shall remain in and not pass from you until the same are paid for, and until all the notes

given therefor are fully paid; and in default of payment as above agreed, you or your agent may take possession of and remove said machines without legal process.

> "Latrobe Milling Co.
> "P. H. Soxman, Pres.
> "H. C. Best, Sec'y.
> "D. J. Soxman, Treas.

"P. O. address, Latrobe, county of Westmoreland, State of Pennsylvania.

"Shipping address, Latrobe, county of Westmoreland, State of Pennsylvania.

"We accept the above order upon the conditions named, and hereby make the guaranty above set forth this 11th day of December, 1883, at Columbus, Ohio.

> "Case Manufacturing Co.,
> "By O. Watson, P't.

"All settlements must be made with and all notes given and moneys paid direct to the Case Manufacturing Co."

On the 20th of October, 1884, the machinery having all been furnished and the mill started, a settlement was made by the purchasers with the same agent of plaintiff, Davis, who had negotiated the sale in the first instance. Having already paid one thousand dollars, a check was given for one thousand more, which was paid; and two notes, one for two thousand dollars, due in one year, and one for four thousand, due in eighteen months. These notes were not signed with the name of the Latrobe Milling Company, but were signed "P. H. Soxman, Pres't; H. C. Best, Sec'y," with the seal bearing the name "Latrobe Milling Company, Limited," impressed upon it. The agent brought these notes and money back to Columbus, and turned them over to Mr. Shough, then acting manager, (Mr. Watson, the president, being ill). The contract was made when Mr. Watson was both president and the active manager of the affairs of the company. On receiving these notes Mr. Shough, dissatisfied with their form, wrote this letter:

"COLUMBUS, OHIO, *October* 29, 1884.
"Latrobe Milling Company, Latrobe, Pa.

"DEAR SIRS: Mr. Davis has handed us your settlement, which is all satisfactory, with the exception that the notes are not properly signed. They are only signed by the president and secretary. They should be signed 'The Latrobe Milling Company, Limited,' by P. H. Soxman, president, and H. C. Best, secretary, and your seal attached. If you are willing to put them in proper shape, we will send you the notes with new ones filled out for you to sign and return; otherwise your settlement is very satisfactory, and we are glad to place you among our long list of friends. We are obliged to you for your good letter, as well as your settlement, and we shall endeavor to use it when it will do us all good. According to the laws of your State, a corporation is only liable to the extent of the property they hold, there being no individual responsibility outside of the property, and, believing that you are willing to do what is just and right, we will ask you to assign your insurance policies to us. The notes run for a long time, and there being no other security on them, we ask you to do this for us. Should your mill burn, as it is liable to do, then it would be optional with you whether you pay us or not. You will recognize that this is business, and, while we have all the confidence in you and have very flattering reports about you, at the same time you will understand that it is the business way of doing, and we have no doubt but what you will be willing to grant our request.

"Awaiting your early reply and with best wishes, we are, etc., yours truly,     THE CASE MANUFACTURING CO.,
"By SHOUGH."

Subsequently, the Milling Company sent the following letter:

"LATROBE, PA., *December* 2, 1884.
"Case Manufacturing Company.

"DEAR SIR: Enclosed find note corrected as requested; also, the insurance policy for $6000, which you will return to me; will please pardon, as secretary has been on the road and is

not at home yet, and I thought it my duty, after getting his signature, to send to you. The mill is running right along, only we have a hard time to compete with Mr. Chambers, across the way, as he has reduced the price to nothing, viz., $4.25 per barrel of flour, but the race belongs to the one that has the most sand to stand up to it.

"Yours respectfully, LATROBE MILLING Co.,
"D. J. S."

To which letter the plaintiff returned this reply:

"COLUMBUS, OHIO, *December* 4, 1884.
"Latrobe Milling Company, Latrobe, Pa.

"DEAR SIRS: We are 'n receipt of the notes, which are all 'O. K.;' also the insurance policies, which we will have the transfer made on and returned to you to be signed, and have your agent there endorse the transfer. At the price Chambers is selling flour there surely is a loss in it, and we hope it won't take him long to see his folly, and restore the price, so that you can both make some money.

"Yours truly, THE CASE MANUFACTURING Co.,
"By SHOUGH.

"P. S.—Accept thanks for fixing our matters up in proper shape.

At the time the original order was signed no corporation defendant existed. The parties were contemplating the formation of a corporation or association, and on May 5, 1884, they did form, under authority of the general law of the State of Pennsylvania, an association known under the name "Latrobe Milling Company, Limited," by which the liability of the parties interested in the new association was limited to the amount of the capital stock, and the notes given in the settlement were the notes of this limited liability company. Mr. Watson, the president of the plaintiff corporation, died in the winter of 1884–1885. Thereafter, John F. Oglevee became its secretary and treasurer and general manager of its affairs. The first note not being paid when due, in the fall of 1885, Oglevee visited Latrobe to look after its payment. Subse-

quently, examining the records in the county-seat of Westmoreland County, in which Latrobe lies, he found judgments against the Milling Company and mortgages upon its property. Shortly after this discovery he returned to Columbus, and thereupon the plaintiff company returned the two notes which it had received, alleging that they did not conform to the contract, and demanded payment of the first note, two thousand dollars and interest, and in lieu of the second, a new note, executed by the Latrobe Milling Company, and not by the limited liability company. The defendants refused to comply with this demand, and returned the notes to the plaintiff. Thereafter this suit was brought. To this suit the defendants pleaded that it was understood at the time of the original contract that they were to organize a corporation with limited liability, and that its notes were to be the notes to be given for deferred payments. Secondly, that after the organization, and after the delivery of the machinery, the plaintiff, with knowledge of the facts, accepted the notes in full payment and satisfaction of the debt. When the case came on for trial a jury was waived. Findings of fact were made, and a judgment entered thereon in favor of defendants, to review which these proceedings in error have been brought to this court.

*Mr. Charles E. Burr* and *Mr. James S. Moorhead* for plaintiff in error. *Mr. James Watson* was on the brief.

*Mr. Paul H. Gaither* for defendants in error. *Mr. W. H. Young* and *Mr. J. A. Marchand* were on the brief.

Mr. JUSTICE BREWER delivered the opinion of the court.

The first question is as to the admission of the testimony of H. C. Best, a witness for and one of the defendants, as to conversations between them and the plaintiff's agent Davis, at the time the original contract was signed. The scope of this testimony was substantially that they proposed to organize a corporation, with limited liability, that the purchase was to be made in the interest of such corporation, and that its obligations were to be given for the deferred payments. The con-

tention is, that this testimony varied the original contract, and was, therefore, inadmissible.

The first and obvious reply is, that it makes against the contention of plaintiff that its acceptance of the notes of the limited liability company was through a misunderstanding. Whatever obligations may have been assumed by the original contract, the fact that the plaintiff knew that the contemplation of the purchasing parties was a limited liability company, and that on the delivery of the machinery it accepted the notes of such company, is evidence strong, if not convincing, that its acceptance of such notes was not through a mistake, but from a recognition of the understanding between the parties at the time of the original contract. How can the plaintiff, knowing that the expressed understanding of the purchasers at the time of the original contract was the creation of a limited liability company, and the giving of its notes in satisfaction of the deferred payments, now be permitted to say that the written contract spoke of no such limited liability company, and that it took the notes of such a company through misunderstanding and mistake? Whatever other significance and value such testimony may have, it is certainly significant and competent upon the question whether the acceptance of the notes of this limited liability company was intentional or through mistake.

Further than that, the original contract upon its face suggested corporate rather than personal liability. The signatures were "Latrobe Milling Company. P. H. Soxman, Pres't. H. C. Best, Sec'y. D. J. Soxman, Treas." While if there were no corporation such signatures might impose personal liability; yet the purport and notice of such signatures was corporate, and not individual, liability. When to that is added the knowledge of the plaintiff as to the character of the proposed corporation, and its acceptance of the notes of the corporation in fact organized, can it be doubted that the plaintiff knew the significance of these signatures, or that it was knowingly dealing with a contemplated corporation, and knowingly accepted the notes of such corporation as a fulfilment of all the contract obligations assumed by this instrument? The idea that the

plaintiff supposed it was dealing with individuals, and contemplated personal liability, is also negatived by the letter of October 29, 1884, which shows that it understood that it was dealing with a corporation, and that, by the laws of Pennsylvania, corporate liability extended not beyond the assets of the corporation, and cast no burden upon the individual stockholders. The parol testimony thus admitted was not to contradict the language of the written contract, but to explain any doubt as to its meaning, and to fortify the claim of the defendants that the subsequent acceptance of the notes of the limited liability company was no departure from the thought of the original contract, but a well understood and intentional recognition of its real meaning. We see no error in the admission of this testimony.

The second and third assignments of error may be considered together. They present the proposition that the court erred in finding that the notes of the limited liability company of October 20, 1884, were accepted as payment and satisfaction of the original liability under the contract. Here we face the proposition that we are not triers of fact. And if there were evidence upon which such a finding might properly rest, we should accept the finding as conclusive, and inquire no further into the testimony than we should into its sufficiency to sustain the verdict of a jury. Surely the facts that we have already referred to, the correspondence between the parties, is some, if not satisfactory and conclusive evidence that these notes were accepted as closing out the original contract. The conduct of the plaintiff tends to support this view. It took the check of the limited liability company for one thousand dollars and received from it certain notes; and then, stating that it was aware that no liability attached beyond the amount of the property of the corporation, it requested and received a change of notes into the supposed proper form of obligations of the limited liability company, and also insurance policies on the property, and then using one of these notes by way of discount, treated the matter as closed for more than a year. Supposing this first note discounted by the plaintiff had been paid by the Milling Company, could the plaintiff then be

heard to say that these notes were not received in payment? While, in fact, it was not paid, yet the plaintiff treated it as its property and negotiated it. Can it now be heard to say that such note was simply evidence of the amount due, when it received and used it as its property? It is unnecessary to affirm that these matters show conclusively that the obligations assumed by the original contract were satisfied and discharged by the settlement and notes of October, 1884. It is enough to affirm that there is in these matters testimony from which such a conclusion might be drawn; and, therefore, the findings of the trial court in this respect cannot by this court be ignored.

The fourth allegation of error is, that notwithstanding the acts of Mr. Shough may have apparently been such as to bind the company plaintiff, he had, in fact, no authority to bind the company by such acts. It is sufficient to say in respect to this matter, that his own testimony, corroborated by that of other members of the company, is that during the dates of these transactions he was acting as its financial manager, and, therefore, it cannot now repudiate its liability for his actions.

These are the only errors alleged, and in them we see nothing to justify us in disturbing the rulings of the trial court. The judgment is, therefore,

*Affirmed.*