STATEMENT OF THE CASE.
This action was originally commenced in the probate court of Pottawatomie county by James Maddox, the defendant in error, to recover a judgment of $1,000, the proceeds of certain drafts deposited with the Tecumseh State Bank, plaintiff in error, by one Michael Wogoman, and alleged to have been assigned by him to Maddox, after the deposit was made.
Judgment was rendered upon the verdict of the jury in said probate court in favor of said bank, and Maddox appealed to the district court, where a demurrer to defendant's answer was sustained and plaintiff in error, by leave of said court, filed an amended and supplemental answer, which was demurred to by defendant in error; and said district court sustained said demurrer and rendered judgment on the pleadings in favor of the defendant in error and against the plaintiff in error for *Page 584 
$1,070 and costs. Plaintiff in error excepted; a motion for a new trial was overruled and excepted to and the cause duly brought to this court for review.
The petition of the defendant in error in said cause states: That on the 29th day of March, 1894, one Michael Wogoman deposited in the bank of the defendant three certain drafts for collection; that the amount of said drafts then collected was to be placed to the credit of said Wogoman on the books of said bank, subject to his direction. Said drafts amounted to the sum of $1,000; that at the time of depositing the said drafts, said Wogoman took and received from said defendant bank a certificate of deposit in due and proper form, signed by the president of said bank, as the evidence of this deposit; that afterwards, in due course of business, the defendant bank, collected said drafts and received into its possession the full amount and proceeds of said drafts, amounting to the sum of $1,000; that no part of the same was ever drawn out of said bank by the said Wogoman or by any person for him, or by his authority; that afterwards, on the 25th day of September, 1894, said Wogoman, for a valuable consideration to him paid, sold and transferred to the plaintiff, Maddox, the said certificate of deposit, and thereby transferred to said Maddox the said sum of $1,000, so on deposit in said defendant's bank; that by reason of said sale and transfer, said Maddox became the owner of said certificate of deposit, and of the $1,000 so collected and held by said bank, and was and is entitled to have said sum paid to him by said bank; that on the 27th day of September, 1894, Maddox, within proper banking hours, presented said certificate of deposit to said bank, the back of which was endorsed as follows: "For value received, I hereby sell and assign unto James Maddox, the within certificate *Page 585 
of deposit and all my claim to the sum of $1,000 by me deposited in the State Bank of Tecumseh on the 29th day of March, 1894, and no part of said sum has been withdrawn by me or on my order, and all of which is due from said bank and unpaid, without recourse on me. (Signed) Michael Wogoman." And said Maddox, at the time of presenting the said certificate to said bank as aforesaid, demanded of said bank payment thereof; that said bank refused to recognize said certificate of deposit and refused to pay or in any manner accept the check of said Maddox, drawn on said bank for said sum, or to accept said certificate of deposit and refused to honor either of the same, or to pay any portion of said sum of money to said Maddox.
On the 4th day of October, 1895, under leave of the district court, and within the time fixed by the court, said bank filed in said district court an amended and supplemental answer to said petition in which said bank denied each and all the allegations in said petition except such as were in and by said amended answer specifically admitted. Said answer admitted that on the 29th day of March, 1894, Michael Wogoman deposited with defendant three certain drafts for collection; that the same were duly collected by the defendant; that the amount of proceeds thereof was $1,000. The answer then alleges that the bank received said drafts and the proceeds thereof and agreed to hold the same and pay the same out pursuant to and in accordance with a contract and agreement made between said Wogoman and one Charles J. Benson, a memorandum of which contract and agreement, made at the time, was in words and figures as follows, to-wit:
"March 29, 1894.
"Received from Michael Wogoman, one thousand dollars, subject to the following conditions: That when *Page 586 
Michael Wogoman shall receive either homestead or filing papers on the southwest quarter of section thirty-three, township ten N. R. 5 east, then said sum of money shall be paid to C. J. Benson, of Tecumseh, O.T., said Benson having contested said land and contest having been decided in his favor, and when cancellation of said land shall be made on the books of the land office at Oklahoma City, said Michael Wogoman shall make his application for said land.
"(Signed) W. S. SEARCH, President."
That said money, the proceeds of said drafts, should by the mutual agreement of said Wogoman, said Benson and said bank be held by said bank until said Wogoman should be permitted to make homestead entry of or file upon the said described land. That when said Wogoman should make such entry and file upon the said land, then said sum of $1000, held as aforesaid, should be paid the said Benson; that in pursuance of said agreement said Wogoman did immediately make settlement on said tract of land under the homestead law, and at the time of filing said answer had availed himself of the said agreement, had made homestead entry thereof, and filed thereon, under said agreement; that said Benson had, prior to the said March 29, 1894, contested the homestead entry of one Aquilla C. Owens on said land, alleging that said homestead entry was fraudulent and void because said Owens was disqualified to make such entry by reason of having violated the law under which said land had been opened to settlement; that said Benson, prior to said date, had presented his evidence in said contest case in the United States land office at Oklahoma City, had paid the fees, costs and charges thereof, had proved said allegations, and had purchased and was then the owner of valuable improvements then on the said land, consisting of a house, fences, plowed ground and other improvements, all of which was then the personal *Page 587 
property of the said Benson. That prior to said date on February 3, 1894, the register and receiver of said land office rendered a decision in said contest case in favor of said Benson, and had recommended to the commissioner of the general land office that the homestead entry of said Owens be cancelled and that the preference right to make homestead entry of said lands be awarded to said Charles J. Benson.
That it was on said 29th day of March, 1894, contracted and agreed between said Wogoman and Benson that the said $1,000, deposited as aforesaid, should be paid by said bank to said Benson, for and in consideration of the aforesaid agreement, and the aforesaid improvements on said land, the personal property of said Benson, and in consideration of said Benson waiving his preference right to make homestead entry of said tract of land, and his refraining from exercising the same, and from making homestead entry thereof, at such time and under such circumstances as the said Wogoman might make homestead entry thereof, and of permitting the settlement rights acquired by said Wogoman by virtue of the purchase of the aforesaid improvements on said land to attach thereto under the homestead laws. That notice of the decision of the commissioner of the general land office of the cancellation of the homestead entry of said Owens and that the preference right to make homestead entry of said tract of land had been awarded to Benson, was served on said Benson on about March 25, 1895; the said Benson immediately notified the said Wogoman of that fact; that on the 28th day of March, 1895, Benson went with Wogoman to the United States land office at Oklahoma City, and filed with the said office a waiver, withdrawal and dismissal of his preference right to make homestead entry on said land, *Page 588 
acquired as aforesaid; and immediately and before any intervening rights of any other person attached to said land, Wogoman made homestead entry thereof and filed thereon and received filing papers on said land. That the aforesaid waiver of said preference right and the aforesaid improvements sold to Wogoman by said Benson was and is reasonably worth $1,000 and was of the value of $1,000; that the defendant bank on or about the 5th day of April, 1895, paid the aforesaid $1,000 to said Benson in accordance with the terms and conditions of said contract and agreement and that all the parties to the aforesaid contract and agreement have complied with the conditions and terms thereof.
That on the 4th day of October, 1895, Maddox filed in said district court, a demurrer and reply to said amended and supplemental answer. That the reply filed therein specifically denied that said Benson had any improvements on said land, or that improvements were embraced in or were a part of said consideration in said contract, or were mentioned in connection with said agreement; that on the 5th day of October, 1895, the district court sustained said demurrer. The plaintiff in error, at the time, duly excepted. Afterwards, on said day, said plaintiff in error, electing to stand on said pleading, and refusing further to answer therein, the said court, upon the pleadings in said cause, rendered judgment in favor of the defendant in error, and against the plaintiff in error, for the sum of $1,070 and costs of the action; that on the same day the plaintiff in error filed its motion in said court in said cause for a new trial which said motion was on said day by the court overruled. And the cause is duly brought to this court by petition in error for review.
The errors assigned are: *Page 589 
1. Said court erred in sustaining the demurrer of the defendant in error to the answer of the plaintiff in error.
2. Said court erred in sustaining the demurrer of the defendant in error to the amended and supplemental answer of the plaintiff in error.
3. Said court erred in rendering judgment on the pleadings in favor of the defendant in error against plaintiff in error.
4. Said court erred in overruling motion for new trial filed by plaintiff in error.
The opinion of the court was delivered by
We deem it unnecessary to consider the question raised by the first assignment of error as to whether the court below erred in sustaining the demurrer to the original answer, as the error therein, if any, was waived and cured by the failure of the plaintiff in error to stand therein, and by the filing of its amended and supplemental answer, and as the amended and supplemental answer contains in addition to the new matter therein stated, all the material allegations of the original answer, the entire question is presented by the ruling of the court in sustaining a demurrer to such amended supplemental answer.
A peculiar condition is presented by the pleadings in this cause. The defendant in error, having filed, on the same day, and presumably at the same time, a demurrer to the amended answer, and also a reply thereto, the reply specifically denying certain of the material allegations in said answer. These pleadings are inconsistent. *Page 590 
A demurrer, for the purposes thereof, admits the truth of all the material allegations in the pleading, and a party cannot, at one and the same time, admit and deny the truth of the allegations set forth in a pleading. But as the court below appears to have ignored this reply and given it no consideration, and no objection or exception appears in the record to its filing, we will treat the case as though no such reply was in the record.
Counsel for defendants in error contend that the new matter set up in the amended answer was not proper subject matter of amendment, that it was not an amendment, but was new, distinct and entirely different matter which shifted and changed the defense upon foreign grounds not occupied or contemplated in the original answer; that it presented a different issue from the one tried in the probate court, and therefore was not permissible under the statutes relating to amendment.
The statute relating to amendment, § 4017, of ch. 66. Code of Civil Procedure, is very liberal; but whether sufficiently liberal to permit such an amendment, is not necessary for us here to determine. The subject of amendment to pleadings is largely in the discretion of the court, and the question whether a court exceeds its discretion in the matter of allowing an amendment, is not one that is raised by demurrer. A demurrer does not go to the right of incorporating matter in a pleading but to the sufficiency of such matter, The defendant in error, not having, by motion to strike such answer from the files, or other proper proceeding, under the rules of practice, raised the question, but having chosen to challenge its sufficiency by demurrer, has not preserved the question of the right of the court to permit such amendment.
The only question therefore in the case is: Did the said amended supplemental answer present a good and *Page 591 
sufficient defense to the cause of action stated in plaintiff's petition? This is to be determined by a consideration as to whether the facts stated in such answer, and the agreements therein alleged between the said Wogoman and the said Benson, constituted a good and sufficient consideration for the assignment of the moneys deposited by said Wogoman with the plaintiff in error to said Benson.
The amended answer alleged that Benson, prior to the deposit of said money in the bank, had contested the homestead entry of one Owens on the grounds that said Owens was disqualified to make entry of such land; that he had presented his evidence in said contest case, paid all charges and fees and had proven Owens disqualification; that the register and receiver of the land office had decided in favor of said Benson and had recommended to the general land office that Owen's entry be cancelled and that the preference right to make homestead entry of said land be awarded to said Benson. That Benson, as a contestant for said land, had valuable improvements thereon, a house, fences and plowed ground and other improvements. That when his preference right was approved by the general land office, he was to surrender the same and permit Wogoman to file thereon without any contests by him, Benson, and without any assertion by him, Benson, of such preference right. That when Wogoman should make entry on such land, the personal property and improvements thereon should be his. Did this constitute a good and sufficient consideration, for the assignment by Wogoman to Benson of the $1,000 deposited in the bank?
The authorities seem to leave no question or doubt that such agreement constitutes a good consideration for such an assignment. We can discover no difference in *Page 592 
principle or material distinction in facts between this case and the case of Pelham et al. v. Service, supreme court of Kansas, March, 1891, 26 Pac. Rep. 29.
In that case Service had made a homestead entry upon certain lands in Wichita county, Kansas, and had pending a protest against the final proof of one William H. Montgomery on and to said land in the WaKeeney land office. To settle the question of conflict of right to the same, it was agreed between Pelhamet al. and said Service that; in consideration of said Service furnishing to the other parties to the agreement a relinquishment to his homestead entry and a written withdrawal and dismissal of said protest and hearing, the other parties to the agreement should pay to said Service the sum of $5,000. Service brought suit on this agreement for the $5,000, alleged performance on his part and demanded judgment. There was a demurrer to his petition for the reason that it did not constitute a cause for action, the pith of the demurrer being that there was no consideration for the agreement, the contract itself, and the petition on its face showing the facts, that Service had no possessory right in the land, had nothing to sell and could transfer nothing to the plaintiffs in error. The demurrer was overruled and the overruling of such demurrer was the only question presented to or considered by the court. In that case, the court said:
"Contracts about the possession, improvements and relinquishments of rights on public lands, when free from fraud, can be enforced and constitute a good consideration."
The doctrine of the case being that the relinquishment of a right to a homestead entry on public lands, and the withdrawal of a written protest against the final *Page 593 
proof of another, is a good and valid consideration in a written instrument for the payment of money.
In McCabe v. Caner, 68 Mich. 182, it was held that where a defendant executed to plaintiff certain promissory notes in consideration of plaintiff's agreement to relinquish and surrender to the government his certificate of homestead entry to enable defendant to locate the land, and the surrender was made as agreed, it was a valid consideration for the notes. The record in that case discloses the fact that the plaintiff had entered under the homestead law of the United States a parcel of land in Clare county, subject to such entry, and received a certificate of entry from the land office; that the notes in question were given by the defendant to the plaintiff upon the agreement of the plaintiff that he would surrender his certificate of entry to the government and would relinquish all his interest thereunder to the government at the request of the defendant, to enable the defendant to locate said land and acquire the interest of the plaintiff therein; that such was the sole consideration given for said notes. The court, in the opinion in the case, says:
"We have no doubt about the correctness of this decision upon the defendant's own showing. The testimony of the misrepresentation and fraud was not admissible under the pleadings, and has no rightful place in the case and should have been excluded when objected to. The plaintiff performed his agreement as the testimony shows, and it was a legal one. The government had not found fault with the plaintiff's conduct in the premises at the time the notes were given; and the testimony tended to show that it stood ready to recognize the homestead rights he surrendered for the note; and they were a legal consideration therefor. Really the government could enforce it or not as it chose. The plaintiff's relinquishment of his rights in the premises was a good consideration for the notes." *Page 594 
The court cited in support of its decision therein, Olson v.Norton, 8 N.W. Rep. 878; Thompson v. Hanson, 11 N.W. Rep. 86;Lamb v. Davenport, 18 Wall. 307; Myers v. Croft, 13 Wall. 291;Kennedy v. Shaw, 43 Mich. 359; Sanford v. Huxford, 32 Mich. 318;Rood v. Jones, 1 Doug. [Mich.] 188.
In Lamb v. Davenport, 18 Wall., the supreme court of the United States says:
"The right of the United States to dispose of her own property is undisputed, and to make rules by which the land of the government that is sold or given away is acknowledged; but, subject to these well known principles, parties in possession of the soil might make valid contracts even concerning the title predicated upon the hypothesis that they might thereafter lawfully acquire the title, except in cases where congress has imposed restrictions on such contracts."
And in that case the court held that unless forbidden by some positive law, contracts made by actual settlers upon the public lands concerning their possessory rights, and concerning the title to be acquired in the future from the United States, are valid as between the parties to the contract, though there be at the time no act of congress by which the title may be acquired and though the government is under no obligation to either parties in regard to the title.
In Thompson v. Hanson, 11 N.W. 86, the facts stated were: That defendants Hanson and Johnson entered into an agreement with the plaintiff by the terms of which he was to procure the cancellation of the entry of one Holmes and then enter the land under the timber culture act for Hanson's benefit. In consideration of this agreement, defendants executed a note for $200 upon which the suit was brought. Holmes' entry was cancelled July 1, 1878. On July 2, 1878, plaintiff filed *Page 595 
with the register of the Worthington, Minn., land office an affidavit and paid a fee of ten dollars as prescribed by statute. This was done in the name of and for the use and benefit of Hanson, the effect being to entitle him to enter the land specified. It was there held that the note was founded upon a sufficient and not illegal consideration.
Fully supporting the doctrine of these cases, as above stated, and directly in point, are the following: Lapham v.Head, 21 Kan. 332; Bell v. Parks, 18 Kan. 152; Fesler v. Haas,19 Kan. 216; and applying the doctrine of these cases to the case at bar they would seem to be conclusive of the validity of the contract set up in the answer of the plaintiff in error, as showing the agreement therein stated to constitute a good and valid consideration for the assignment of the money deposited by Wogoman to Benson. As the facts were stated in the amended answer, Benson was contesting the entry of Owens. A successful contest entitled him to a preference right of entry of said land, which right he was to surrender when the same should be confirmed, and by such surrender permit Wogoman to make entry and acquire the rights which he, Benson, had surrendered. This, we think, he might lawfully do, and that such surrender upon the authority of the cases cited, supra, would constitute a good and valid consideration for the assignment made.
But the case at bar is much stronger to establish the right of plaintiff in error to pay over the money in question to Benson, and to be exempt from liability therefor, either to Wogoman or to any subsequent assignee than the cases heretofore cited; for if the allegations in this amended answer be true, and they must, under the demurrer filed, be taken as true, then there was an independent consideration for the assignment from *Page 596 
Wogoman to Benson. Benson had made improvements, or was the owner of improvements, on the land in question consisting of a house, fences and valuable improvements made upon the land by plowing and breaking the sod on a portion thereof. These, the answer alleges, were sold and conveyed to Wogoman as a part of the consideration for said $1000. And it matters not whether Benson was in the actual and undisputed possession of said property or could deliver the possession thereof to said Wogoman, the right to such possession was a valid consideration. The parties knew precisely what they were doing. There could have been no mistake or misunderstanding as to the extent of Benson's interest either in the land or the personal property thereon situated. If there was any consideration of value there can be no inquiry now into its sufficiency. Parties place their own value on their purchases, and unless their bargain is rescinded, they must pay what they agree to pay. (Kennedy v. Shaw, 5 N.W. 396; Dell v. Parks, 18 Kan. 162;Lapham v. Head, 21 Kan. 332.)
There is no law that we know of which prohibits the sale of improvements on public lands of the United States, and there is no reason why they may not be proper subjects for sale and serve as actual value and valuable consideration for contracts. (Caldwell v. Ruddy, Sup. Ct. of Idaho, 1 Pac. Rep. 339;O'Hanlon v. Denver, 22 Pac. Rep. 407; Paxton Cattle Co. v.First National Bank of Arrapahoe, 33 N.W. 271.)
"A valuable consideration in the sense of the law, may consist either in some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." (Addison on Contracts, vol. p. 31.) *Page 597 
The only authorities to which we have been referred, in support of the contention of the defendant in error, are:Dameron v. Dingee, Sup. Ct. Colo., 29 P. 305; Bennette v.Collins, 1 L. D. 69; Welch v. Duncan, 7 L. D. 186; Tillinghamv. Vanhouten, 15 L. D. 394; but none of these cases are applicable to the question involved here. Those cases only hold, and hold correctly, that the preference right of a successful contestant is personal and cannot be transferred to another; that such preference right or any right of entry or other inchoate right to acquire title to public land, cannot be sold or transferred from one party to another. No such question is involved in this case. It is not pretended that Benson undertook to transfer his preference right to Wogoman. He contracted to surrender such right to the government so that Wogoman might acquire the same right for himself.
This answer alleges that he not only surrendered that right but that in pursuance of the agreement, Wogoman made entry upon the land, went into possession of said land, the personal property and improvements transferred to him by Benson, and at the time this cause was tried was in the peaceable and uncontroverted possession of everything he contracted to attain, and was enjoying every right which Benson contracted that he might acquire; but counsel for defendant in error contends that before the preference right of said Benson had been confirmed by the general land office, and before he surrendered such right, and before Wogoman entered into the undisputed enjoyment and possession of the lands and personal property, Wogoman, by the assignment of said moneys, so deposited in the plaintiff in error's bank, to Maddox, the defendant in error had rescinded the contract between himself and Benson. This he could not *Page 598 
do, if it was a valid contract when made. It did not need to be an executed contract. An executory contract, if valid when made, is a good consideration for a promise.
The agreement between Wogoman and Benson was not void, as being against public policy. It contravened no law or policy of the government. It is not claimed that fraud entered into it or that it violated any rule of morals. What is meant by rescissions of a contract? Bishop defines it as "the avoiding of a voidable contract. " (Bishop on Contracts, § 679.) But even where a contract is voidable and is sought to be rescinded by one of the parties thereto, equity and good conscience requires that he shall place the other in statu quo. He will not be permitted to repudiate a contract and retain the benefits derived thereunder. The statutes of this Territory, particularly, specify the cases and conditions under which parties to a contract may rescind the same; and this case falls under none of the classes therein specified. (Statutes of Oklahoma, 1893, §§ 866 and 868.)
From the foregoing it is our conclusion that the court below erred in sustaining the demurrer to the amended and supplemental answer of plaintiff in error to the petition of defendant in error in this cause; that said amended and supplemental answer presented a good and sufficient defense to the action of defendant in error and said demurrer should have been overruled.
For the reasons stated, the action of the court below sustaining said demurrer and in entering judgment upon the pleadings in favor of the defendant in error against the plaintiff in error is reversed, and this cause is remanded to the court below with instructions to overrule said demurrer and grant a new trial. *Page 599 
Scott, J., having presided in the court below, not sitting; all the other Justices concurring.