## COHEE et al. v. TURNER & WIGGINS.

No. 2773.  Opinion Filed May 20, 1913.

Rehearing Denied June 30, 1913.

(132 Pac. 1082.)

1. EVIDENCE—Parol—Contracts. When the question arises in a suit on a written obligation as to whether the signers executed the same in a representative capacity or as individuals, and anything appears on the face of the instrument which suggests a doubt as to the party bound, or as to the character in which the signers acted, parol evidence is competent, as between the original parties at least, for the purpose of showing the true intent of the parties when executing the instrument.

(a) Such evidence is not admitted for the purpose, nor does it have the effect, of varying the language of the written instrument; it is admitted to explain and clear away the doubt and uncertainty inhering in the written language itself.

(b) Where there is nothing on the face of the written instrument which suggests doubt as to the party bound, or

as to the character, whether representative or individual, of the signers, then it is error to admit parol evidence tending to show that the signers executed the same in a representative character, so as to relieve them from individual liability.

2. **PLEADING—Appeal and Error—Amendments—Discretion.** The question of allowing amendments to pleadings is addressed to the sound judicial discretion of the trial court, and its action in allowing or refusing same will not be disturbed except in cases where this discretion has been abused.

(Syllabus by Brewer, C.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Action by Turner & Wiggins against Charles Cohee and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

*H. H. Brown* and *Harreld & Ward,* for plaintiffs in error.
*Cruce, Cruce & Bleakmore,* for defendants in error.

Opinion by BREWER, C. In January, 1906, the plaintiffs in error entered into a written contract of employment with Turner & Wiggins, a firm of lawyers, by which said firm was employed to represent the interests and claims of a class of colored people in the Choctaw and Chickasaw Nations usually called "Freedmen," before Congress and its committees and the various departments of the federal government, in the protection of their rights and in the advancement of their claims and interest relative to enrollment of themselves and their new-born babes, and as to their rights and claims of right in the lands and properties of said tribes. This suit was brought on said contract, and a judgment obtained by said firm of lawyers from which the defendants below, as plaintiffs in error here, have appealed.

A number of questions are raised in the record, but two of which are seriously urged in the brief; the others appearing to have been abandoned. These questions are: (1) That the court erred in refusing to permit the defendants to testify that they signed the contract in a representative capacity only and did not intend to be bound individually thereby. (2) That

the court abused its discretion in refusing to permit the defendants to amend their answer in the course of the trial as to material matters.

1.   On the first proposition as stated above, it is contended that, although the contract in suit is in writing and its execution admitted in the pleading, yet that it is so framed as to be ambiguous as to the capacity, whether representative or individual, in which the makers signed it.   The contract recites:

"Now therefore, we, Charles Cohee, Robert Cobb, Ed Humdy, etc., constituting the executive committee and the duly authorized and empowered members and claimants in this behalf, *and for themselves and* those whom they represent as such claimants ·in the premises, do hereby as such, *warrant and guarantee* to said Turner & Wiggins, that in the event of diligent performance of duty, they shall receive as compensation for services under this contract, the sum of one dollar per capita aforesaid, *to be paid by the said parties of the first part.*" (Italics ours.)

It seems to be well settled both in this and many other jurisdictions that when the question arises, in a suit on a written · obligation, as to whether the signers executed the same in a representative capacity or as individuals, and anything appears on the face of the instrument which suggests a doubt or ambiguity as to the party bound, or as to the character in which the signers acted, parol testimony is competent as between the original parties, for the purpose of showing their true intent in the execution of the instrument. *Weagant v. Camden et al., ante,* 132 Pac. 487; *Farmers' & M. Bank v. Hoyt,* 29 Okla. 772, 120 Pac. 264; *Janes v. Citizens' Bank,* 9 Okla. 546, 60 Pac. 290; *Miller v. Way,* 5 S. D. 468, 59 N. W. 467; *Case Mfg. Co. v. Soxman,* 138 U. S. 431, 11 Sup. Ct. 360, 34 L. Ed. 1019.   The list of authorities on this point might be extended indefinitely.

Such parol evidence is not admitted for, nor does it have the effect of, ·contradicting or varying the language of the written agreement, but it is admitted to explain away the doubt inhering in the written language itself.

But is the contract in suit ambiguous or uncertain as to who is to be bound, or as to the character in which the signers executed the same? The claim is made that the defendants executed it "as members of the executive committee of the Choctaw & Chickasaw Freedman's Association, and in no other capacity." This contention does not appear sound. If we analyze the language, we find these guarantors saying *"now therefore we* (following with the twelve individual names), constituting the executive committee, etc., * * * *and for themselves, and* those whom they represent, etc., * * * *warrant and guarantee* * * * the payment of the compensation in the contract." If this association had any legal existence, and these men had authority to bind it, they did so. But it is further clear that they went further than this, and, by the very letter of the bond, bound themselves, as individuals, in specific language, in addition to attempting to bind the so-called association and the members thereof. Bad grammar does not necessarily render the meaning of a writing ambiguous or doubtful.

This association was composed of a numerous and widely scattered class of colored people; the individuals were unacquainted with each other in the main, but had a common legal status relative to certain rights and claims of interest in the property of these Indian tribes. The association, so called, does not appear to have had any corporate or other legal status. The twelve individuals who signed the contract evidently entered into the same in their own interest and in the interest of those persons similarly situated. And when the contract was reduced to writing and executed by these individuals it seems entirely clear and free from doubt, considering only the language used, that they particularly intended to individually and personally guarantee the payment of the amount agreed upon to the attorneys employed. A careful study of the language used, we think, makes this conclusion manifest. It is earnestly urged that it would be unreasonable to think that they intended to bind themselves to pay a sum equal to $1 per capita of the

freedmen enrolled. But this argument has no application, if
they did by this writing bind themselves. But if it had ap-
plication, we are not so sure that it would be either unreasonable
or absurd to suppose they intended it. Nor would we be com-
pelled to ascribe to them motives of pure benevolence or phil-
anthropy. In assuming the relations they did, a rare field of
speculation and possibility of exploitation was opened up to
these leaders. In their guaranty of $1 per capita, they had
excuse, and perhaps could justly have collected a much more
substantial sum from the many interested but less active parties.

2. The point is urged that the court abused its discre-
tion in refusing to permit an amendment near the close of the
trial. The request and refusal appear in the record as fol-
lows:

"At this stage of the proceedings, the counsel for the de-
fendant moved the court to permit them to amend their plead-
ings so as to show proper and necessary allegations of fraud
of all of the defendants, which motion the court denies because
of the status of the case at this particular time, as made by
pleadings long pending in the court."

The suit was filed in June, 1908. In August, 1908, the
defendants filed verified answers, denying that they constitute
an executive committee or that they made the contract, and
that if their names appeared on it they had been fraudulently
placed thereon. Without withdrawing the averments of their
former answer, in which it was denied that they constituted
or acted as an executive committee, or that they made the con-
tract, defendants on May 18, 1910, filed a second verified an-
swer, in which it was specifically admitted that they did execute
the contract in suit, but that they executed the same in
their official capacity as members of the executive com-
mittee. This second answer was in direct contradiction of
the first, both being verified. The request to amend does
not indicate the matter which they wished to assert, except
fraud generally stated; but, in examining the testimony pre-
ceding the offer, it appears the defendants wanted to prove
that they did not understand what they were signing and

that the terms of what they signed had been misrepresented to them. This would have been to again contradict their sworn answers, and would, of course, have necessitated a mistrial and the continuance of the case. From a careful perusal of the record it is doubted if the offer was made upon any substantial basis, or that any proof would have been forthcoming in substantial support of proposed amendment had it been allowed. It has been decided many times that the question of allowing amendments is addressed to the sound judicial discretion of the court, and that the action of the court in allowing or refusing same will not be disturbed except where this discretion has been abused. *Kuchler v. Weaver*, 23 Okla. 420, 100 Pac. 915, 18 Ann. Cas. 462; *Swope v. Burnham*, 6 Okla. 736, 52 Pac. 924; *Consolidated, etc., Co. v. Burnham*, 8 Okla. 514, 58 Pac. 654; *Tecumseh, etc., Bank v. Maddox*, 4 Okla. 583, 46 Pac. 563.

While our statutes and policy favor very liberal rules relative to amendments of pleadings, in furtherance of justice, yet these rules were never intended to be extended so far as to work injustice to the other side of the case, or to make of court proceedings a farce.

The court did not abuse its discretion.

The other objections need not be considered. The instructions complained of were not objected to. Neither was objection taken to the refusal to give certain other instructions. The other points are not discussed in the briefs and are therefore treated as abandoned.

The cause should be affirmed.

By the Court: It is so ordered.